

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| YOLANDA WEBB, Individually, and as Special Administrator of the Estate of ASHLEY WEBB, a minor, Deceased, | )<br>)<br>)<br>) |
| Plaintiff, | )<br>) |
| | ) No. 04 C 4625 |
| vs. | )<br>) |
| | ) Judge Manning |
| UNITED STATES OF AMERICA, MOUNT SINAI HOSPITAL MEDICAL CENTER OF CHICAGO, INC., and KEITH WILLIAMS, M.D., | )<br>) Magistrate Judge Schenkier<br>)<br>)<br>) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

This lawsuit arises out of the death of Ashley Webb on July 28, 1998. As a result of that death, plaintiff has asserted wrongful death and related claims against the United States (Counts I-III); Mount Sinai Hospital (Counts IV-VI), a hospital where Ashley Webb was treated; and Dr. Keith Williams (Counts VII-IX), a doctor who treated her. This lawsuit was commenced on July 14, 2004; prior litigation involving the death of Ashley Webb originally was commenced in state court on July 28, 2000 against Mount Sinai, Dr. Williams, and others.

In the course of the litigation pending in this Court, plaintiff has served discovery requests on the United States seeking disclosure of any statements taken from witnesses, and any incident or investigative reports, notes, memoranda, statements, correspondence and other documentation regarding the matter in suit. In response to that discovery request, the United States has withheld ten responsive documents on the ground of privilege. Pending before the Court is plaintiff's motion

for a ruling on the United States's privilege objection, which seeks to compel production of the withheld documents (doc. # 16).

The Court has reviewed the briefs submitted by the parties in connection with the motion, as well as the relevant authorities. In addition, the Court has conducted an *in camera* review of the ten documents in issue. For the reasons that follow, plaintiff's motion is granted; the United States is ordered to produce the documents in question.

## I.

The United States asserts that all of the documents in question are protected under the Illinois Medical Studies Act, 735 ILCS 5/8-2101, *et seq.* (hereinafter, "the Act"); additionally, the United States argues that "several of the documents are also protected production by the work product doctrine" (Def.'s Mem. at 4). In relevant part, Section 2101 of the Act provides that:

> ... confidential assessments of a health care practitioner's professional competence, or other data of ... committees of licensed or accredited hospitals or their medical staffs, including Patient Care Audit Committees, Medical Care Evaluation Committees, Utilization Review Committees, Credential Committees and Executive Committees, or their designees ... used in the course of internal quality control or of medical study for the purpose of reducing morbidity or mortality, or for improving patient care or increasing organ and tissue donation, shall be privileged, strictly confidential and shall be used only for medical research, increasing organ and tissue donation, the evaluation and improvement of quality care, or granting, limiting or revoking staff privileges or agreements for services, . . . .

735 ILCS 5/8-2101. The Act further provides that information falling within the ambit of Section 2101 is not discoverable. 735 ILCS 5/8-2102. The purpose of this privilege "is to ensure that members of the medical profession will effectively engage in self-evaluation of their peers in the interests of advancing the quality of health care." *Roach v. Springfield Clinic*, 623 N.E.2d 246, 251 (Ill. 1993).

The work-product doctrine, of course, serves an entirely different purpose. That doctrine applies to "documents and tangible things . . . prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent)." FED.R.CIV.P. 26(b)(3).

As a threshold matter, plaintiff raises the argument that, given the differing purposes of the Act privilege and the work-product doctrine, the United States cannot properly claim that the same documents are protected by both privileges (Pl.'s Reply Mem. at 7-8). We note that, whereas a fundamental purpose of the work-product doctrine is to "avoid deterring a lawyer's committing his thoughts to paper," *U.S. v. Frederick*, 182 F.3d 496, 500 (7th Cir. 1999), protection of "legal advice is not a goal of the protection offered by the Act." *Webb v. Mt. Sinai Hospital and Medical Center of Chicago, Inc.*, 807 N.E.2d 1026, 1033 (Ill. App. Ct. 2004)(citation omitted). Accordingly, we agree that a given document cannot be protected by both the Act privilege and the work-product doctrine. However, we do not consider that point to be fatal to the United States's assertion of privilege, which we will generously construe as arguing that documents are protected from disclosure under either the Act or the work-product doctrine – but not both.

That said, for the reasons that follow, the United States's privilege assertions nonetheless fail on the merits.

### A.

In asserting a privilege under the Act, the United States's lead – and, indeed, sole – argument is that each of the documents in issue was created after July 28, 1998, the date of Ashley Webb's death (Def.'s Mem. at 2). However, the case that the United States cites for this proposition, *Webb v. Mt. Sinai Hospital*, 807 N.E.2d at 1035, makes it clear that the Act does not broadly apply to

3

documents about an incident at a hospital merely because they were generated after the date of the incident. To the contrary, *Webb* specifically held that the Act does not "protect against disclosure of information generated before a peer-review process begins or after it ends." 807 N.E.2d at 1033 (citations omitted). Moreover, *Webb* made clear that not every document that is generated during the pendency of a peer-review process falls within the protection of the Act: a document that is created "in the ordinary course of the hospital's medical business, or for the purpose of rendering legal opinions or to weigh potential liability risk or for later corrective action by the hospital staff is not privileged." *Id.* To qualify for a privilege under the Act, the documents in question must be "generated specifically for the use of a peer-review committee." *Id.*

In this case, we know that the death of Ashley Webb occurred on July 28, 1998, and we further know that all of the ten documents in issue were generated between the dates of October 6, 2000 and January 14, 2002. However, the United States has offered no evidence to show that a peer-review committee (as defined in the statute) in fact was ever established; or when any such peer-review process commenced; or when any such peer-review process concluded. In short, the United States has offered no evidence to show that the documents it seeks to protect under the Medical Studies Act in fact were created during the pendency of a peer-review process, which is an essential prerequisite to a claim of privilege. *Webb*, 807 N.E.2d at 1033.

In addition, even assuming that the documents were generated during the pendency of a peer-review process, the United States has failed to offer evidence to show that any of the documents were generated specifically for that process. As *Webb* held, documents that are created for other purposes are not protected by the Act, even if the documents are later used in the peer-review process. *Webb*, 807 N.E.2d at 1033. The United States has offered no affidavits or other evidence to show that these

documents were created uniquely and specifically for a peer-review process. And, based upon its *in camera* review, the Court finds nothing in the documents themselves to show that they were generated specifically for a peer-review process, but plenty of indication that the documents were generated for other purposes that are not privileged: such as, risk assessment.

As the proponent of the privilege, the United States bears the burden of establishing the applicability of the Act, *Berry v. West Suburban Hospital*, 788 N.E.2d 75, 78 (Ill. App. Ct. 2003). Thus, the consequences of failing to make "a more complete record" that might establish a privilege falls to the government. *Webb*, 807 N.E.2d at 1034. Accordingly, the Court rejects the assertion by the United States of a privilege under the Act for the documents in question.

**B.**

We now turn to the United States's work-product assertion. Once again, the United States's sole argument for the application of the work-product doctrine is based on timing: the United States points out that each of the documents in issue was created after the death of Ashley Webb on July 28, 1998, and after the commencement of the state court action on July 28, 2000 (Def.'s Mem. at 4). But, the applicability of the work-product doctrine does not turn solely on the timing of a document's creation. *I.B.J. Whitehall Bank & Trust Co. v. Corey & Assocs., Inc.*, No. 97 C 5827, 1999 WL 617842, at *4 (N.D. Ill. Aug. 12, 1999) ("the fact that a lawsuit is imminent does not automatically make all documents generated by a party (or parties) work-product"); *see also In Re Air Crash Disaster at Sioux City, Iowa*, 133 F.R.D. 515, 520 (N.D. Ill. 1990) (rejecting the view that pending litigation renders all non-attorney memoranda work-product "simply because the ultimate findings of the employees will be conveyed to the attorneys who are in charge of the litigation"). The purpose for which the documents are created is critical. *See Loctite Corp. v. Fell-Pro, Inc.*, 667 F.2d 577,

582 (7th Cir. 1981) (documents are entitled to work-product protection "[o]nly where the document is primarily concerned with legal assistance"). *U.S. v. Hamilton*, 19 F.3d 350, 354 (7th Cir. 1994) ("the party asserting an evidentiary privilege, . . ., bears the burden of establishing" it).

The United States has failed to meet that burden. At the outset, the United States does not identify which of the ten documents in issue it claims are subject to work-product protection: on the same page of its memorandum, the United States points out that each of the documents was created after the state court suit was commenced, but states that several – and thus not all – of the documents are protected by work-product (Def.'s Mem. at 4). The United States does not inform the Court which documents it thinks are work product and which documents it thinks are not; but, in any event, in the Court's view, the United States has not established that any of them are.

None of the documents appears to be authored by an attorney, or to reflect communications from an attorney. Thus, production of the documents would not undermine the fundamental purpose of the work-product doctrine, which is to avoid a situation where a lawyer would be deterred from "committing his thoughts to paper." *Frederick*, 182 F.3d at 500. We note that one of the documents (an August 29, 2000 letter from Nancy Egbert to Bruce Miller) refers to a Risk Management/Quality Improvement Report (which appears to be the January 17, 2001 report) as "attorney work product." However, a document does not become attorney work product merely through the expedient of labeling it as such. We find nothing about the Risk Management/Quality Improvement Report itself that shows it is attorney work product: the document was prepared by a doctor, and not a lawyer; the document does not indicate that it was prepared at the request of lawyers or for use by lawyers; and there is nothing about the information contained in the report that suggests an attorney's input or direction. And, the United States has not offered any affidavits or other evidence to show that

6

there is something about the circumstances of the creation of any of these documents that would establish their work-product status. Accordingly, we conclude that the United States has failed to establish that any of the documents in issue are subject to protection under the work-product doctrine.

## CONCLUSION

For the foregoing reasons, plaintiff's motion for a ruling on defendant's assertion of privilege (doc. # 16) is granted. The Court overrules the United States's assertions the documents in issue are privileged from production under either the Illinois Medical Studies Act or the federal work-product doctrine. The Court therefore orders that the ten documents in issue (*see* Def.'s Mem. at 3) be produced to plaintiff by March 31, 2005.

ENTER:

SIDNEY I. SCHENKIER
**United States Magistrate Judge**

**Dated: March 21, 2005**

7